**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SONNY I. SZETO, | : | |
| Petitioner, | : | CIVIL ACTION NO. |
| | : | 3:09-CV-1443 (JCH) |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | MARCH 29, 2010 |
| Respondent. | : | |

**RULING RE: MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**
**PURSUANT TO 28 U.S.C. § 2255 (Doc. No. 1)**

## I.    INTRODUCTION

On June 26, 2006, Sonny I. Szeto ("Szeto"), a federal prisoner and the petitioner

in this case, pled guilty before United States District Judge Peter C. Dorsey to using an

interstate facility to engage in sexual activity with a minor, in violation of 18 U.S.C. §

2422(b), and possession of child pornography, in violation of 18 U.S.C. §

2252A(a)(5)(B).  On January 19, 2007, the case was transferred to this court.  See

Order of Transfer, United States v. Szeto, 3:06-cr-55 (JCH) (Doc. No. 49).  On March 6,

2007, this court sentenced Szeto to 168 months of imprisonment, and a lifetime of

supervised release.  Szeto now petitions the court, pursuant to 28 U.S.C. § 2255, to

vacate, set aside, or correct his sentence (Doc. No. 1) (hereinafter "Petition").

Szeto's claims stem largely from the fact that Judge Dorsey, who presided at

Szeto's plea hearing on June 26, 2006, did not personally impose Szeto's sentence.

Szeto also claims that his attorney, Roger Stavis, provided ineffective assistance of

counsel because he "failed to object to Judge Dorsey's baseless and unexplained

recusal" from the case.  For the following reasons, Szeto's habeas Petition is denied.

1

## II.     DISCUSSION

### A.     Violation of Due Process[1]

In his Petition under 28 U.S.C. § 2255, Szeto alleges four grounds for relief, three of which (Grounds One, Three and Four) allege due process violations based on Judge Dorsey's transfer of his case to this court prior to sentencing.  In Ground One, Szeto alleges that his due process rights were violated because he was not sentenced by Judge Dorsey.  Szeto states that he only pleaded guilty in reliance on statements made by Judge Dorsey and Attorney Stavis that, (a) if he were to plead guilty, he would receive a "relatively light" sentence, and (b) Judge Dorsey personally would sentence him.  In Ground Three, Szeto alleges that, because Judge Dorsey "for no reason improperly recused himself and transferred the case," without giving "opportunity to counsel for either side to object or to agree to his self-initiated recusal," his due process rights were violated.  In Ground Four, Szeto states that his guilty plea is "suspect" because Judge Dorsey "violated [the] judicial commandment" to remain on Szeto's case absent "reasons for disqualification or recusal."  Ground Four also alleges that Judge Dorsey made a promise to Szeto to sentence him personally.

---

[1] The government argues that Szeto is procedurally barred from obtaining habeas relief on his due process claim, because he did not raise such claim on direct appeal.  As the Supreme Court has held, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.' "  Bousley v. United States, 523 U.S. 614, 622 (1998) (citations omitted).  It is undisputed that Szeto failed to raise his due process claims on direct appeal.  See Petition at 5, 8, 10.  Moreover, Szeto has not suggested that he is actually innocent of the crimes to which he pleaded guilty.

On the issue of procedural default, therefore, the question for the court is whether Szeto can demonstrate "cause" and "actual prejudice."   Szeto claims that he was unaware of his right to raise his due process claim on direct appeal, and also alleges that his attorney filed an appellate brief without his consent.  Id.  The court has doubts as to whether this constitutes "cause" and "actual prejudice" within the meaning of habeas jurisprudence.  However, the court need not address the issue of procedural default, because Szeto's due process claim fails on the merits.

The court concludes that Grounds One, Three and Four, which argue that Szeto was deprived of due process because Judge Dorsey did not personally sentence him, are without merit.  First, there is nothing in the plea agreement signed by Szeto that can be reasonably construed as a promise that Szeto would be sentenced by Judge Dorsey personally.  The plea agreement mentions neither Judge Dorsey nor any other federal judge in this district.  Second, in Szeto's plea colloquy, Judge Dorsey asked Szeto multiple times if anyone (other than the government) had made him any promises regarding his sentence.  Each time he was asked, Szeto unambiguously responded that no one had made any such promises.  See, e.g., Plea Transcript at 37:21-25 ("Has anybody made you any promise or indicated any commitment that has been made by the Court, or agreement has been reached with the Court as to what your sentence is going to be?  THE DEFENDANT: No, Your Honor.").  Szeto also unambiguously stated that no one had promised him any benefit in exchange for pleading guilty and waiving his right to indictment.  Id. at 14:23-15:2 ("THE COURT: Is there anything that anybody other than the government has, in any was, promised you in the way of a benefit, to get you to enter a plea of guilty to the charges and waive the indictment process?  THE DEFENDANT: No.").  He also affirmed that he was pleading guilty freely and that no one had forced him to do so.  Id. at 31:6-16.  While Judge Dorsey used the first person in explaining that the sentence to be imposed was ultimately a matter of the court's discretion, see, e.g., id. at 37:3-6 ("In other words, you're going to be subject . . . to my determination, whatever it may be"); id. at 34:23-35:3 ("[I]f I decide that there's some basis for doing so, I can depart from the guidelines; that is, on the high side or on the low side if I think there's some basis for doing that."), nothing in the plea colloquy can

3

be reasonably construed as a promise either that Judge Dorsey personally would perform Szeto's sentencing, or that Szeto would receive a "relatively light" sentence.

In addition, the court is unaware of any precedent under which a defendant has a due process right to be sentenced by the same judge who took his guilty plea. Szeto's Memorandum in Support of his habeas Petition emphasizes that Judge Dorsey's recusal from the case "was without basis under 28 U.S.C. § 455 and in violation of Judge Dorsey's judicial duty and of Szeto's rights to due process of law and to notice and an opportunity to be heard." Mem. in Supp. at 3. It is true that the Second Circuit and other courts of appeals have recognized that "[a] judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is." In re Drexel Burnham Lambert Inc., 861 F.2d 1307, 1312 (2d Cir. 1988) (citations omitted); see also In re Aguinda, 241 F.3d 194, 201 (2d Cir. 2001) ("[W]here the standards governing disqualification have not been met, disqualification is not optional; rather, it is prohibited."). However, the court is unaware of any federal cases--and Szeto has cited none--recognizing a due process right to be sentenced by a particular judge. To the contrary, courts considering the issue have held that "there is no independent federal right to be sentenced by the same judge that took a guilty plea and find no constitutional provision that guarantees such a right." Taylor v. Bowersox, 329 F.3d 963, 969 (8th Cir. 2003). While "it certainly violates the Fourteenth Amendment and deprives a defendant in a criminal case of due process of law to subject his liberty or property to the judgment of a court, the judge of which has a direct, personal, substantial pecuniary interest in reaching a conclusion against him in his case," Tumey v. Ohio, 273 U.S. 510, 523 (1927), "most matters relating to judicial disqualification [do]

4

not rise to a constitutional level." Federal Trade Commission v. Cement Institute, 333
U.S. 683, 702 (1948) (citing Tumey, 273 U.S. at 523).

To the extent Szeto relies on 28 U.S.C. § 455 ("section 455") for the proposition
that Judge Dorsey's transfer of the case to this court deprived him of due process, such
reliance is misplaced.  Section 455 is "designed to promote public confidence in the
impartiality of the judicial process by saying, in effect, if there is a reasonable factual
basis for doubting the judge's impartiality, he should disqualify himself."  In re Literary
Works in Electronic Databases Copyright Litigation, 509 F.3d 136, 140 (2d Cir. 2007)
(quotation marks and citation omitted).  Section 455, as amended by Congress in 1974,
eliminated a judge's "duty to sit" in "in very close cases" in which "an appearance of a
conflict of interest" might be present.  United States v. Amico, 486 F.3d 764, 775 n.3
(2d Cir. 2007); see also United States v. Lovaglia, 954 F.2d 811, 814-15 ("The new test,
though it no longer includes a 'duty to sit,' should not be used by judges to avoid sitting
on difficult or controversial cases.") (quotation marks and citation omitted).  However,
section 455 is not an exhaustive list of scenarios that may warrant the recusal of a
judge from a case or, as happened here, the transfer of a case from one judge to
another.

As the Second Circuit has held, "[l]itigants are entitled to an unbiased judge; not
to a judge of their choosing." In re Drexel Burnham Lambert Inc., 861 F.2d at 1312.  In
this case, the core of Szeto's argument is that he received a heavier sentence than he
expected.  While the court does not doubt that Szeto is disappointed by the sentence
imposed by this court, "it is well settled that a mere disappointed expectation of
leniency, as opposed to an understanding with the trial judge, is not sufficient cause to

vitiate a plea." United States ex rel. McGrath v. LaVallee, 319 F.2d 308, 314 (2d Cir. 1963). Indeed, "[a] sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime." United States v. Pope, 554 F.3d 240, 244 (2d Cir. 2009) (quotation marks and citation omitted).  Because Szeto had no due process right to be sentenced by Judge Dorsey personally, Szeto's due process claims are denied.

      B.    Ineffective Assistance of Counsel

In Ground Two of his habeas Petition, Szeto alleges that Attorney Stavis' assistance was ineffective, because Attorney Stavis "failed to object to Judge Dorsey's baseless and unexplained recusal, and he failed to explain to [him] that [he] had the constitutional due process right to be sentenced by Judge Dorsey and/or to withdraw [his] guilty plea."  Petition at 6.  To prevail on his claim for ineffective assistance of counsel, Szeto must satisfy the two-part test articulated in Strickland v. Washington, 466 U.S. 668 (1984).  Strickland requires a defendant to show that (1) "counsel's representation fell below an objective standard of reasonableness," id. at 688, and (2) "counsel's performance [was] prejudicial to the defense."  Id. at 692.  As the Second Circuit has noted, "[t]he Strickland standard is rigorous."  Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001). Indeed, "[t]he Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight."  Yarborough v. Gentry, 540 U.S. 1, 8 (2003).  As the Supreme Court has held, there exists a "strong presumption" that a counsel's performance is reasonable for Sixth Amendment purposes.  Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting and citing Strickland, 466 U.S. at 688-89).

6

The court finds no reason to stray from the presumption that Attorney Stavis' representation fell within the range of reasonableness.  First, as stated above, Szeto had no due process right to be sentenced by Judge Dorsey.  Therefore, Attorney Stavis was not unreasonable in failing to inform him of such "right."  Second, Attorney Stavis' Affidavit makes clear that he indeed took steps on Szeto's behalf to investigate the reasons for Judge Dorsey's transfer of Szeto's case to this court.  Upon learning of Judge Dorsey's recusal, Attorney Stavis "immediately called chambers to determine why Judge Dorsey had recused himself, in the hope that [he] could convince him to reconsider that decision."  Affidavit of Roger Stavis at ¶ 3.  Attorney Stavis also spoke to Assistant United States Attorney James Filan, "in an effort to obtain any information about the recusal and to confirm that he would be available for a conference."  Id. Attorney Stavis ultimately received word that Judge Dorsey "would neither reconsider [the case] nor explain his decision."  Id.  After the case was transferred to this court, Attorney Stavis "set forth at sentencing the general comments Judge Dorsey had made" regarding Szeto's potential sentence.  Id. at ¶ 3; see also Sentencing Transcript at 40:19-21 ("Judge Dorsey indicated to us in his chambers that warehousing people with Mr. Szeto's illness is not the answer and that therapy is the answer.").

In sum, Attorney Stavis took reasonable steps to investigate and seek to reverse the transfer, and he then brought to the sentencing judge's attention matters that transpired before Judge Dorsey.  Attorney Stavis' representation of Szeto did not fall below an objective standard of reasonableness.  The court therefore denies Szeto's claim for ineffective assistance of counsel.

**III.    CONCLUSION**

For the foregoing reasons, Szeto's Petition for relief under 28 U.S.C. § 2255 is

**DENIED**.  Because the petitioner has failed to make a substantial showing of the denial

of a constitutional right, any appeal from this Order would not be taken in good faith and

a certificate of appealability shall not issue.  The Clerk is directed to close the case.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 29th day of March, 2010.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge