*09cv1443 ruling*
*5/3*
*folder*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

FILED

2010 MAY -3 P 3: 44

DISTRICT COURT

| | | |
|---|---|---|
| SONNY I. SZETO, | : | |
| Petitioner, | : | CIVIL ACTION NO. |
| | : | 3:09-CV-1443 (JCH) |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | MAY 3, 2010 |
| Respondent. | : | |

**RULING RE: MOTION FOR RELIEF FROM JUDGMENT (Doc. No. 26); MOTION FOR LEAVE TO FILE (Doc. No. 27); MOTION FOR RECONSIDERATION (Doc. No. 28)**

## I.    INTRODUCTION

On June 26, 2006, Sonny I. Szeto ("Szeto"), a federal prisoner and the petitioner in this case, pled guilty before United States District Judge Peter C. Dorsey to using an interstate facility to engage in sexual activity with a minor, in violation of 18 U.S.C. § 2422(b), and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). On January 19, 2007, the case was transferred to this court. See Order of Transfer, United States v. Szeto, 3:06-cr-55 (JCH) (Doc. No. 49). On March 6, 2007, this court sentenced Szeto to 168 months of imprisonment, and a lifetime of supervised release.

On September 14, 2009, Szeto filed a Petition, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence. After this court granted a Motion to set a briefing schedule (Doc. No. 11), Szeto's original Memorandum in Support of his Petition was filed on January 22, 2010 (Doc. No. 13). The government filed its Response on March 15, 2010 (Doc. No. 19). On March 24, 2010, Szeto moved the court for an extension of time to file a reply (Doc. No. 23). The following day, the court granted that

Motion (Doc. No. 24), ordering Szeto to file any reply by April 8, 2010.  On March 29, 2010, erroneously overlooking its scheduling order, this court issued a Ruling denying Szeto's Petition, and denying Szeto a certificate of appealability (Doc. No. 25) (hereinafter "March 29 Ruling").

On April 8, 2010, Szeto moved the court to reconsider its March 29 Ruling. Szeto also moved the court for relief from judgment, and to reconsider the denial of a certificate of appealability.  As explained herein, the Motion for Reconsideration (Doc. No. 28) is granted.  The Motion for Leave to File (Doc. No. 27) is granted. The Motion for Relief from Judgment (Doc. No. 26) is denied.

## II.    STANDARD OF REVIEW

The Second Circuit has held that "[t]he standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted).  There are three grounds that justify granting a motion for reconsideration: (1) an intervening change in controlling law; (2) the availability of newly discovered evidence; and (3) the need to correct clear error or prevent manifest injustice. Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992).  That the court overlooked controlling law or material facts may also entitle a party to succeed on a motion to reconsider. Eisemann v. Greene, 204 F.3d 393, 395 n.2 (2d Cir. 2000) (per curiam) ("To be entitled to reargument, a party must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the

2

underlying motion.") (internal quotation marks omitted).

**III.  DISCUSSION**

    A.    <u>Motion for Reconsideration</u>

        Szeto argues that, in issuing its March 29 Ruling, this court overlooked the April 8, 2010 deadline it had previously set for the filing of Szeto's Reply Memorandum.  The court agrees.  In this district, "[r]eply briefs are not required and the absence of a reply brief will not prejudice the moving party."  L.R. 7(d).  However, by granting Szeto's Motion to Extend the Time to File a Reply, the court clearly created an expectation that it would not rule on Szeto's Petition until receiving Szeto's Reply on or before April 8, 2010.  To deny the Motion for Reconsideration would thus be a manifest injustice to Szeto.  The Motion for Reconsideration (Doc. No. 28) is granted.

    B.    <u>Motion for Leave to File and Motion for Relief from Judgment</u>

        Preliminarily, the court will grant Szeto's Motion for Leave to File a 16-page Memorandum in Support of his Motion for Relief from Judgment, which also serves as a Memorandum in Support of his Motion for Reconsideration (Doc. No. 27) (hereinafter "Reply").  Because it has granted Szeto's Motion for Reconsideration, the court now turns to Szeto's Motion for Relief from Judgment (Doc. No. 26).  The court will reevaluate Szeto's Petition in light of his newly filed Reply, as well as his original Memorandum in Support of his Petition, and the government's Response.

        1.    Due Process

        In his Petition under 28 U.S.C. § 2255, Szeto alleges four grounds for relief, three of which (Grounds One, Three and Four) allege due process violations based on Judge Dorsey's transfer of his case to this court prior to sentencing.  In its March 29

3

Ruling, this court construed Szeto's due process claims as alleging that Szeto was deprived of due process because Judge Dorsey did not personally sentence him. March 29 Ruling at 3. Szeto has since clarified his position, claiming that "Judge Dorsey's sudden and baseless recusal is a violation of Szeto's right to due process of law." The government argues that such claims fail on the merits.[1] The court agrees.

To begin, the court rejects Szeto's repeated assertion that Judge Dorsey's transfer of Szeto's criminal case to this court constituted a "recusal." Black's Law Dictionary defines the term "recuse" as (1) "to remove (oneself) as a judge in a particular case because of prejudice or conflict of interest" or (2) "to challenge or object to (a judge) as being disqualified from hearing a case because of prejudice or a conflict of interest." Black's Law Dictionary (8th ed. 2004). Judge Dorsey never "recused" or "disqualified" himself from Szeto's case. Rather, the case was simply transferred, or reassigned, to the undersigned judicial officer. See 28 U.S.C. § 137. Such a reassignment may occur, for example, for workload purposes, upon the illness of a judge, or for any number of other reasons not implicating recusal or conflict of interest.

Moreover, to the extent Szeto argues that his due process rights were violated because Judge Dorsey personally did not sentence him, his claim is without merit. As this court noted in its March 29 Ruling, nothing in Szeto's plea agreement can be

---

[1] The government also argues that Szeto is procedurally barred from obtaining habeas relief on his due process claim, because he did not raise such claim on direct appeal. Because Szeto's claim fails on the merits, the court will not resolve the issue of procedural default.

The court notes that Szeto's Memorandum in Support inaccurately states that, in its March 29 Ruling, this court "found" that Szeto's due process claims had been procedurally defaulted. This court reached no such conclusion, and instead opted to resolve Szeto's Petition solely on the merits. While the court expressed doubts as to whether Szeto could demonstrate "cause" and "actual prejudice," it ultimately concluded that it "need not address the issue of procedural default, because Szeto's due process claim fails on the merits." March 29 Ruling at n.2.

4

reasonably construed as a promise that Szeto would be sentenced by Judge Dorsey personally.  Although Judge Dorsey used the first person during the plea colloquy--to explain that the sentence to be imposed was ultimately a matter of the court's discretion, see, e.g., Plea Transcript at 37:3-6 ("In other words, you're going to be subject . . . to my determination, whatever it may be"); id. at 34:23-35:3 ("[I]f I decide that there's some basis for doing so, I can depart from the guidelines; that is, on the high side or on the low side if I think there's some basis for doing that.")--nothing in the plea colloquy can be reasonably construed as a promise either that Judge Dorsey personally would perform Szeto's sentencing, or that Szeto would receive a "relatively light" sentence.  Moreover, during that hearing, Szeto clearly affirmed that no one had made him any promises regarding his sentence.  See, e.g., id. at 37:21-25 ("Has anybody made you any promise or indicated any commitment that has been made by the Court, or agreement has been reached with the Court as to what your sentence is going to be?  THE DEFENDANT: No, Your Honor.").  Szeto also unambiguously stated that no one had promised him any benefit in exchange for pleading guilty and waiving his right to indictment, id. at 14:23-15:2 ("THE COURT: Is there anything that anybody other than the government has, in any was, promised you in the way of a benefit, to get you to enter a plea of guilty to the charges and waive the indictment process?  THE DEFENDANT: No."), and unambiguously affirmed that he was pleading guilty freely and that no one had forced him to do so.  Id. at 31:6-16.

The court is unaware of any precedent indicating that a defendant's due process rights are implicated when a district judge transfers that defendant's case to a different district judge, between the time of guilty plea and the time of sentencing.  Moreover, as

it stated in its March 29 Ruling, the court is unaware of any precedent under which a defendant has the right to be sentenced by the same judge who took his guilty plea. As the Supreme Court has held, "most matters relating to judicial disqualification [do] not rise to a constitutional level." Federal Trade Commission v. Cement Institute, 333 U.S. 683, 702 (1948) (citing Tumey v. Ohio, 273 U.S. 510, 523 (1927)); see also Taylor v. Bowersox, 329 F.3d 963, 969 (8th Cir. 2003) ("[T]here is no independent federal right to be sentenced by the same judge that took a guilty plea and find no constitutional provision that guarantees such a right.").

In addition, Szeto's reliance on 28 U.S.C. § 455 ("section 455") for the proposition that Judge Dorsey's transfer of the case to this court deprived him of due process, is misplaced. Section 455 is "designed to promote public confidence in the impartiality of the judicial process by saying, in effect, if there is a reasonable factual basis for doubting the judge's impartiality, he should disqualify himself." In re Literary Works in Electronic Databases Copyright Litigation, 509 F.3d 136, 140 (2d Cir. 2007) (quotation marks and citation omitted). It is true that section 455 includes a list of circumstances in which a judge is required to disqualify himself from a proceeding. However, as this court noted in its March 29 Ruling, that list is not exhaustive. Nothing in section 455 prevents a judge from transferring a case. Moreover, and perhaps more importantly, Judge Dorsey never "recused" or "disqualified" himself from Szeto's case. As stated above, the case was merely transferred.

2.      Ineffective Assistance of Counsel

Szeto alleges that Attorney Stavis' assistance was ineffective, because Attorney Stavis "failed to object to Judge Dorsey's baseless and unexplained recusal, and he

failed to explain to [him] that [he] had the constitutional due process right to be
sentenced by Judge Dorsey and/or to withdraw [his] guilty plea." Petition at 6. To prevail
on his claim for ineffective assistance of counsel, Szeto must satisfy the two-part test
articulated in Strickland v. Washington, 466 U.S. 668 (1984). Strickland requires a
defendant to show that (1) "counsel's representation fell below an objective standard of
reasonableness," id. at 688, and (2) "counsel's performance [was] prejudicial to the
defense." Id. at 692. As the Second Circuit has noted, "[t]he Strickland standard is
rigorous." Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir.2001). Indeed, "[t]he Sixth
Amendment guarantees reasonable competence, not perfect advocacy judged with the
benefit of hindsight." Yarborough v. Gentry, 540 U.S. 1, 8 (2003). As the Supreme
Court has held, there exists a "strong presumption" that a counsel's performance is
reasonable for Sixth Amendment purposes. Kimmelman v. Morrison, 477 U.S. 365,
381 (1986) (citing Strickland, 466 U.S. at 688-89).

Attorney Stavis took steps on Szeto's behalf to investigate the reasons for Judge
Dorsey's transfer of Szeto's case to this court, upon learning of the order of transfer.
Attorney Stavis "immediately called chambers to determine why Judge Dorsey had
recused himself, in the hope that [he] could convince him to reconsider that decision."
Affidavit of Roger Stavis at ¶ 3. Attorney Stavis also spoke to Assistant United States
Attorney James Filan, "in an effort to obtain any information about the recusal and to
confirm that he would be available for a conference." Id. Attorney Stavis ultimately
received word that Judge Dorsey "would neither reconsider [the case] nor explain his
decision." Id. After the case was transferred to this court, Attorney Stavis "set forth at
sentencing the general comments Judge Dorsey had made" regarding Szeto's potential

sentence.  Id. at ¶ 3; see also Sentencing Transcript at 40:19-21 ("Judge Dorsey

indicated to us in his chambers that warehousing people with Mr. Szeto's illness is not

the answer and that therapy is the answer.").

      Szeto's Reply emphasizes that Attorney Stavis provided ineffective assistance of

counsel because he "could have done much more" than taken the steps enumerated in

the previous paragraph.  Specifically, Szeto argues that Attorney Stavis

> could have (1) moved to vacate the Order of recusal, (2) objected, in writing, to
> the recusal, so as to preserve the issue for appellate review, (3) moved that
> Judge Dorsey give a reason for his recusal so that the issue would have been
> presented squarely on the record, (4), at the time of disposition but before
> imposition of sentence, raised before this Court the issue of the case's return to
> Judge Dorsey, and (5), as Szeto specifically requested he do, raised the issue in
> his appellate briefs.

Reply at 7.  In the court's view, Szeto has established neither prejudice nor that

Attorney Stavis' conduct fell below an objective standard of reasonableness.

      To establish prejudice, Szeto "must show that there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have

been different.  A reasonable probability is a probability sufficient to undermine

confidence in the outcome."  See Strickland, 466 U.S. at 694.  Szeto has not

demonstrated that his counsel's performance was prejudicial to his case.  While

Attorney Stavis perhaps could have taken additional steps to persuade Judge Dorsey to

keep Szeto's case, or to learn the reason for Judge Dorsey's transfer of his case to this

court, Szeto has not shown that, if such additional steps had been taken, there is a

reasonable probability that the result would have been different.  To the contrary, the

federal courts clearly have the authority to transfer cases between judges, when the

interests of justice so require, in managing the business of the district.[2]

In addition, Szeto cannot show that, if Szeto had stayed with Judge Dorsey, there is a reasonable probability that the result of his sentencing would have been different. Szeto was sentenced by different Article III judge of this district. While different judges may reach different sentencing outcomes, the petitioner has not proven, and cannot prove, prejudice, merely because the undersigned sentenced him, instead of Judge Dorsey.

The court also finds that Attorney Stavis' representation did not fall below an objective standard of reasonableness. Because Szeto had no due process right to be sentenced by Judge Dorsey, Attorney Stavis was not unreasonable in failing to inform him of such "right." Further, as noted above, Attorney Stavis took reasonable steps to investigate and seek to reverse the transfer, and he then brought to the sentencing judge's attention matters that transpired before Judge Dorsey.

3.    Structural Error

Szeto's argument that Judge Dorsey's transfer of his case constituted "structural error" must be denied. "Structural errors are those that 'so fundamentally undermine the fairness or the validity of the trial that they require voiding [the] result [of the trial] regardless of identifiable prejudice.' " United States v. Yakobowicz, 427 F.3d 144, 155 (2d Cir. 2005) (Sotomayor, J., dissenting) (citing United States v. Feliciano, 223 F.3d 102, 111 (2d Cir. 2000)). "To determine whether an error is properly categorized as

---

[2] The court reiterates that Judge Dorsey did not "recuse" himself from Szeto's criminal case. To the extent Szeto argues that Attorney Stavis should have moved to vacate an "Order of Recusal," such claim must be rejected out of hand. There was never any such Order. While an "Order of Transfer" was docketed in Szeto's criminal case on January 17, 2007, no Order of Recusal appears on the docket.

structural, we must look not only at the right violated, but also at the particular nature, context, and significance of the violation." Yarborough v. Keane, 101 F.3d 894, 897 (2d Cir. 1996) (citation omitted).

Szeto has cited no precedent suggesting that Judge Dorsey's transfer of the case to this court may have constituted structural error. In fact, Szeto has cited no precedent suggesting that Judge Dorsey's transfer of the case to this court constituted any kind of error, let alone structural error.

**IV. CONCLUSION**

For the foregoing reasons, the Motion for Reconsideration (Doc. No. 28) is granted. The Motion for Leave to File (Doc. No. 27) is granted. The Motion for Relief from Judgment (Doc. No. 26) is denied. Because the petitioner has failed to make a substantial showing of the denial of a constitutional right, any appeal from this Order would not be taken in good faith and a certificate of appealability shall not issue.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 3rd day of May, 2010.

/s/ Janet C. Hall, USDJ
Janet C. Hall
United States District Judge